**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CAMERE SOLIS, individually and as the representative of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>PLANET HOME LENDING, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**

Plaintiff, CAMERE SOLIS ("Solis"), through her attorneys, brings this action on behalf of herself and all others similarly situated and alleges the following against Defendant, PLANET HOME LENDING, LLC ("Defendant"):

**PRELIMINARY STATEMENT**

1. This case challenges Defendant's practice of assessing and collecting inspection fees while providing related services to mortgages issued pursuant to the United States Department of Housing and Urban Development ("HUD"). The manner in which Defendant imposes inspection fees violates HUD regulations and the contractual language of its assigned mortgage agreements and the mortgage agreements Defendant services for other lenders.

2. This case arises from the Federal Housing Administration's ("FHA") insurance program. The FHA is an entity within HUD. HUD, in turn, was created under the National Housing Act ("NHA"), 12 U.S.C. §§ 1701, *et seq.*

3. The NHA was passed by Congress to promote the availability of low and moderate housing. *Capitol Mort. Bankers, Inc. v. Cuomo*, 222 F.3d 151, 152 (4th Cir. 2000).

4.      Under its mortgage insurance program, the FHA agrees to protect mortgage lenders against risk of loss caused by borrowers' non-payment, thereby making those loans more widely available to a greater portion of the population. *See U.S. v. Peterson*, 538 F.3d 1064, 1068 (9th Cir. 2008) ("By insuring Federal Housing Administration ("FHA") mortgages, HUD assists homebuyers who cannot otherwise afford to purchase homes").

5.      Unlike conventional mortgages, loans insured by the FHA are subject to HUD regulations. *See, e.g., Fireman's Fund Mortg. Corp. v. Zollicoffer*, 719 F. Supp. 650, 658 (N.D. Ill. 1989) (addressing an FHA insured mortgage, court held that the bank and mortgagor have a contractual relationship between them which incorporates HUD regulations imposing obligations on the bank).

6.      Most pertinent here is HUD regulation 24 C.F.R. § 203.377, which provides:

> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default.  When a mortgage is in default and a payment thereon is not received within 45 days of the due date, **and efforts to reach the mortgagor by telephone within that period have been unsuccessful**, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant…. (emphasis added).

7.      Based on the language of § 203.733, it is incumbent upon the mortgagee to attempt to contact a mortgagor by telephone prior to conducting an inspection, and once a property has been found to be occupied, no further inspections are required by HUD or authorized for reimbursement. *See* HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d);[1] Mortgagee Letter 81-26 (HUDML), 1981 WL 389744 at *1 (June 16, 1981); *see also In re Ruiz*, 501 B.R. 76, 82 (E.D. Pa. Nov. 8, 2013).  In other words, once a property subject to an FHA loan is found to be occupied, charges for inspection fees are not allowed.

---

[1]  *See* www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4330.1 (last visited February 5, 2021).

8. Solis is informed and believes, and upon such information and belief avers, that Defendant initiates inspection fees on FHA insured mortgages upon evidence of an alleged default without attempting to contact the mortgagor by phone prior to the inspection and continues the inspections throughout the alleged default regardless of whether it discovers the property is occupied.

9. Solis is informed and believes, and upon such information and belief avers, that Defendant uses the foreclosure process to recoup charges for its unauthorized inspection fees by either requiring mortgagors to pay the fees in order to make their loan current or through final sale of the property at the conclusion of the foreclosure proceeding.

10. Since the power to conduct property inspections and assess fees for inspections of properties subject to FHA insured mortgages lies solely with Defendant, it is incumbent upon Defendant to not wield that power in an immoral, unethical, oppressive, or unscrupulous way or in a manner that can be substantially injurious to consumers.

11. Solis, on behalf of herself and all others similarly situated, brings this case as a class action asserting claims against Defendant for breach of contract and violation of California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code §§ 17200, *et seq.*

12. Solis is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because Defendant violated the regulations of HUD and the FHA mortgages it services in the same or similar manner. This action is based on the same legal theory, namely, liability for Defendant's failure to comply with HUD regulations and the FHA mortgages it services by conducting and assessing fees for unauthorized and unnecessary property inspections of homes which, although in default, are owner-occupied.

13. This action seeks the following relief: an award of the aggregate actual damages

suffered through the assessment, payment, or judgment awards of the illegally assessed inspection fees on residential properties which are occupied.

## PARTIES

14.     Solis is a citizen and resident of California over the age of eighteen (18).  For all pertinent times to this litigation, Solis resided at 24245 Seagreen Dr., Diamond Bar, California 91765 (the "Property").

15.     On information and belief, Defendant is a nation-wide mortgage lender and servicer with its principal place of business located in Meriden, Connecticut.  On information and belief, Defendant engages in making and servicing FHA mortgage loans for residential real estate.

## JURISDICTION AND VENUE

16.     The United States District Court for the District of Connecticut has federal-question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (3) in that Defendant's principal place of business is located in this District and Defendant is subject to personal jurisdiction in this District.

## FACTS

18.     On November 3, 2011, Solis entered into an FHA insured mortgage, entitled Deed of Trust (the "Mortgage" or "Deed of Trust"), with Flagstar Bank, FSB ("Flagstar"). A copy of the Mortgage is attached as Exhibit A.

19.     Throughout her ownership of the Property, Solis continuously occupied it.  The Property was Solis's only residence for all pertinent times to this litigation.

20.     On or about September 25, 2012, Solis received an Official Notice of Default from Flagstar based on her alleged failure to make payments on the Mortgage.  A copy of the September

27, 2012 Notice is attached as Exhibit B.  Thereafter, on or about June 19, 2013, Solis received a Notice of Trustee's Sale.  A copy of the Notice of Trustee's Sale is attached as Exhibit C.

21. During this time, Solis reached out to HUD for assistance on the Mortgage. In response, on or about December 2, 2013, HUD issued an additional loan to Solis which modified the principal and reinstated the Mortgage.  All other aspects of the Mortgage remained the same.  A copy of this modification is attached as Exhibit D.

22. On January 15, 2015, Defendant acquired the Mortgage from Flagstar.  A copy of the Assignment of Deed of Trust memorializing this acquisition is attached as Exhibit E.  As of January 15, 2015, Defendant became a party to the Mortgage and was charged with the servicing of it.

23. On September 1, 2015, Solis filed for Chapter 13 Bankruptcy with the Bankruptcy Court, California Central District, Case. No. 15-23723.  This case was ultimately dismissed on January 31, 2018.  A copy of the Chapter 13 Standing Trustee's Final Report and Account is attached as Exhibit F.

24. On or about January 19, 2016, Defendant sent a letter to Solis notifying her that it was to begin servicing the Mortgage effective February 2, 2016.  A copy of this letter is attached as Exhibit G.

25. On May 8, 2018, Defendant sent Solis a Notice of Default and Intent to Accelerate.  A copy of this Notice is attached as H.  According to the May 8 Notice of Default, Solis needed to make payment on the Mortgage in order to bring it current or otherwise Defendant could elect to accelerate the maturity date of the Mortgage.  *See* Exhibit H.

26. On September 11, 2018, the Notice of Default regarding the Property was filed with the Recorder's Office, Los Angeles County, California. A copy of the September 11, 2018 Notice is attached as Exhibit I.

27. On December 23, 2019, Defendant sent Solis a payoff statement. A copy of the payoff statement is attached as Exhibit J. The payoff statement shows the total amount owed to Defendant in order to finalize the Mortgage. The payoff statement does not include an explanation for any fees charged and does not include an itemized breakdown of fees paid for property inspections. *See* Ex. J.

28. On January 15, 2020, a traditional sale of the Property was completed. A copy of Solis's Closing Statement is attached as Exhibit K. According to the Closing Statement, Solis received $39,902.45 from the equity she had in the home after Defendant received its loan payoff, which included a recoverable balance and other charges. *See* Exhibit K. No description of what was included in the recoverable balance or other charges was provided. *Id.*

29. On February 28, 2020, Solis sent Defendant a Request for Information pursuant to 12 C.F.R. § 1024.36. A copy of Solis's request is attached as Exhibit L. As part of her request, Solis sought a detailed explanation and description of all charges and/or fees added to the unpaid principal balance on the Mortgage. *See* Exhibit L.

30. Having not received any information from Defendant, Solis sent Notices of Errors to Defendant on June 9, 2020 and again on October 28, 2020 requesting the information sought in her February 28, 2020 letter. Copies of the June 9 and October 28 Notices of Errors are attached as Exhibits M and N respectively.

31. Finally, on December 15, 2020, Defendant responded to Solis's request for information.[2] Defendant's response is attached as Exhibit O. In it, Defendant details numerous inspection fees that were assessed to the Mortgage. Specifically, Defendant charged and received payment for the following inspection fees:

| Date | Amount | Date | Amount |
|---|---|---|---|
| 7/25/2012 | $10.50 | 10/4/2016 | $16.00 |
| 8/24/2012 | $ 9.00 | 10/17/2016 | $16.00 |
| 10/3/2012 | $10.50 | 1/6/2017 | $16.00 |
| 10/29/2012 | $10.50 | 1/31/2017 | $16.00 |
| 11/30/2012 | $10.50 | 3/23/2017 | $15.00 |
| 1/2/2013 | $10.50 | 3/23/2017 | $15.00 |
| 1/23/2013 | $14.00 | 3/30/2017 | $16.00 |
| 2/26/2013 | $14.00 | 4/20/2017 | $15.00 |
| 3/27/2013 | $14.00 | 5/25/2017 | $15.00 |
| 4/22/2013 | $14.00 | 7/16/2017 | $15.00 |
| 5/29/2013 | $14.00 | 7/27/2017 | $15.00 |
| 6/24/2013 | $14.00 | 8/30/2017 | $15.00 |
| 7/22/2013 | $14.00 | 10/2/2017 | $15.00 |
| 8/26/2013 | $14.00 | 10/2/2017 | $15.00 |
| 9/25/2013 | $14.00 | 11/29/2017 | $15.00 |
| 1/17/2015 | $15.00 | 1/11/2018 | $15.00 |
| 2/26/2015 | $15.00 | 1/24/2018 | $15.00 |
| 3/3/2015 | $15.00 | 3/26/2018 | $15.00 |
| 4/2/2015 | $15.00 | 4/30/2018 | $15.00 |
| 4/30/2015 | $15.00 | 7/30/2018 | $15.00 |
| 6/9/2015 | $15.00 | 10/16/2018 | $15.00 |
| 6/29/2015 | $15.00 | 11/2/2018 | $15.00 |
| 8/7/2015 | $15.00 | 1/2/2019 | $15.00 |
| 9/1/2015 | $15.00 | 2/1/2019 | $15.00 |
| 10/2/2015 | $15.00 | 2/1/2019 | $15.00 |
| 10/30/2015 | $15.00 | 2/25/2019 | $15.00 |
| 11/30/2015 | $15.00 | 4/24/2019 | $15.00 |
| 12/28/2015 | $15.00 | 6/28/2019 | $15.00 |
| 1/26/2016 | $15.00 | 8/27/2019 | $15.00 |
| 6/16/2016 | $16.00 | 9/27/2019 | $15.00 |
| 7/15/2016 | $15.00 | 12/9/2019 | $15.00 |
| 8/3/2016 | $15.00 | | |

---

[2] Defendant stated that it first responded to Solis's requests on July 27, 2020; however, Solis never received that response.

*See* Exhibit O. In total, Defendant received $915.50 for alleged inspections conducted of the Property.

33. Defendant knew, or should have known, that Solis occupied the Property prior to initiating its inspections. Defendant was in contact with Solis throughout the life of the Mortgage and also mailed the monthly mortgage statements and other notices to Solis at the Property address.

33. Defendant made no attempt, prior to any of the inspections, to contact Solis by telephone or any other means at the Property.

34. Thus, even though Defendant knew, or should have known, that Solis occupied the Property, and never contacted her by telephone, Defendant still charged Solis for inspection fees and collected same.

35. Solis was never provided an opportunity to object to the assessment of the inspection fees on the Mortgage. The inspection fees were merely deducted from the equity Solis had in the Property at the closing; Solis had no control of the payment for the inspections. In fact, until Defendant responded to Solis's request for information, Solis was unaware that she was to be charged for the inspections, as they were not included in the payoff statement (Ex. J) or the Seller's Closing Statement (Ex. K).

36. Paragraph 8 of the Mortgage describes when and under what circumstances fees may be charged and collected. This paragraph states:

> **8. Fess.** Lender may collect fees and charges authorized by the Secretary [HUD].

37. On information and belief, all FHA insured mortgages contain language substantially comparable or identical to paragraph 8 of the Mortgage here.

38. Under Paragraph 8, HUD regulations relating to the types of fees that may be charged by Defendant are incorporated into the Mortgage, including 24 C.F.R. § 203.377.

8

39.     At closing, Solis was assessed $915.50 for inspections of the Property by Defendant and had this amount deducted from the equity she had in the Property. This occurred even though Solis continually and conspicuously occupied and maintained the Property. In other words, Solis was assessed and paid for property inspections that violated 24 C.F.R. § 203.377 and, in turn, the Mortgage.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Solis brings this class action on behalf of herself and the following National Class and California Subclass (collectively "the Classes"):

**A.  National Class for Count I (Breach of Contract):**

All persons who (1) owned residential property subject to an FHA mortgage, (2) occupied the subject property, and (3) were charged inspection fees by Planet Home Lending while still occupying the property.

**B.  California Subclass for Count II (Violation of California's Unfair Competition Law):**

All persons in California who (1) within four years prior to the filing of this action, (2) occupied residential property subject to an FHA mortgage, and (3) were charged inspection fees by Planet Home Lending while still occupying the property.

Excluded from the Classes are Defendant and its employees and agents and members of the Judiciary. Solis reserves the right to amend the Class definition upon completion of class discovery when the contours and the parameters of class become more apparent.

41.     <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: On information and belief, the Classes consist of more than forty (40) and likely thousands of persons who are identifiable through Defendant's records, and are so numerous that joinder of all members is impracticable.

42. <u>Commonality (Fed. R. Civ. P. 23 (a)(2))</u>:  There are questions of fact or law common to the Classes predominating over all questions affecting only individual Class Members including:

(a) Whether Defendant's conduct in charging inspection fees of owner-occupied properties constitutes breach of contract;

(b) Whether Defendant knew or should have known that Solis and the other members of the Classes were occupying the mortgaged properties;

(c) Whether the charging of inspection fees of owner-occupied property is an unfair and oppressive practice which violates California's UCL; and

(d) Whether the Classes are entitled to actual damages plus interest from the collection and/or assessment of impermissible inspection fees, and/or punitive damages.

43. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>: Solis's claims are typical of the claims of other Class Members in that each seeks relief for incurred charges that they should not have been charged, increasing their debt on their respective mortgages, increasing the judgment awards against them, or resulting in their making payments they should not have had to make.

44. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Solis will fairly and adequately protect the interests of the other Class Members.  Solis has retained counsel who are experienced in handling class actions and claims involving unlawful business practices.  Neither Solis nor her counsel have any interests adverse or in conflict with the Classes.

45. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of liability on Solis's claims will also prove liability for the claims of the Classes without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

(c) Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d) The amount likely to be recovered by individual Class Members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Defendant's records will likely enable Solis to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Solis and the Class with the same common proofs;

(iii) A class action will result in an orderly and expeditious administration of claims and it will foster economies of time, effort, and expense;

(iv) A class action will contribute to uniformity of decisions concerning Defendant's practices; and

(v) As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

## COUNT I

## BREACH OF CONTRACT

46. Solis incorporates paragraphs 1 through 39 as if fully stated herein.

47. The respective FHA mortgages of Solis and the Class Members are valid contracts.

48. The FHA mortgages limit the types of fees and charges and the circumstances under which Defendant may collect fees and charges authorized by the Secretary of HUD.

49. HUD does not authorize charges for inspections when a property subject to an FHA mortgage in default is found to be occupied. 24 C.F.R. § 203.377; Mortgagee Letter 81-26 (HUDML), 1981 WL 389744 at *1 (June 16, 1981); *see also In re Ruiz*, 510 B.R. at 82.

50. Notwithstanding this limitation, Defendant charged Solis and the other members of the Class for inspection fees when they occupied their respective properties.

51. Solis occupied the Property at all times during this process.

52. Defendant never sent notice to Solis regarding any of the inspections nor attempted to contact her by telephone to determine whether the Property was occupied.

53. Defendant materially breached the terms of the respective FHA mortgages with Solis and the other members of the Class by charging fees for inspections that were not authorized by the Secretary of HUD and therefore not authorized under the terms of the Mortgage instrument.

54. As a result of Defendant's actions, Solis and the other members of the Class have suffered damages in the form of being charged, assessed, having paid unauthorized inspection fees, or having the debt on their mortgages increase with the inclusion of the unauthorized inspection fees.

55.     Solis, on behalf of herself and the other members of the Class, seeks compensatory damages for breach of contract, reduction of deficiency judgments which include the improper inspection fees, plus prejudgment interest, and costs.

## COUNT II

## VIOLATION OF CALIFORNIA'S UCL – Cal. Bus. & Prof. Code § 17200

56.     Solis incorporates paragraphs 1 through 39 as if fully stated herein.

57.     The purpose of the UCL is to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (Cal. 2002). The scope of the UCL is broad. *Id.*

58.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The three "prongs" of the UCL are independent of each other and may be asserted as separate claims. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).

59.     Under the "unlawful prong," the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Fowler v. Wells Fargo Bank, N.A.*, 2017 WL 3977385, at *2 (N.D. Cal. Sept. 11, 2017).

60.     Under the "unfair prong," the UCL treats as actionable conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious, or conduct that violates an established public policy. *In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, --- F. Supp. 3d ---, 2020 WL 2214152, at *11 (S.D. Cal. May, 7, 2020).

61.     Here, Defendant's practice of assessing inspection fees for properties that are owner occupied conduct violates both the "unlawful" and "unfair" prongs of the UCL. In assessing such fees, Defendant violated a HUD regulation created for the protection of mortgagors under the

13

guidance of a statute with the goal of providing a decent and a suitable living environment for every American family. 12 U.S.C. § 1701t. In other words, Defendant's practice not only violates a HUD regulation, it also offends public policy.

62.     Defendant's conduct against Solis and the Class is both oppressive and deceptive in that it gave Solis and the Class no reasonable alternative to avoid incurring an unlawful charge or penalty nor advised them at all that such charges were being assessed.

63.     Finally, Defendant's conduct constitutes a substantial injury in that it imposed costs on Solis and the Class by having to pay the inspection fees or contest the assessment of them.

64.     As a result of Defendant's practice of assessing and collecting the unauthorized inspection fees, Solis and the Class were damaged by either paying the fees directly, having them deducted during the mortgage foreclosure process, or having to defend against or contest their inclusion in the foreclosure process.

65.     Defendant's conduct in attempting to charge these fees in violation of the Mortgage and HUD regulations offends public policy, is oppressive and deceptive, and caused substantial injury to Solis and Class Members. Not only did Defendant's conduct increase the debt of Solis and the other members of the Class and decrease the equity they held in their homes, the conduct complained of occurred when certain members of the Class were at their most vulnerable – *i.e.* when they were in the process of losing their homes.

66.     Defendant's deceptive attempt to assess and collect the unauthorized inspection fees was the direct and proximate cause of damages incurred by Solis and the Class and was done with the intent of causing Solis and the Class to pay illegal and unauthorized fees.

67.     Accordingly, Solis, on behalf of herself and the other members of the Class, seeks compensatory damages for monies wrongfully collected.

**WHEREFORE**, Plaintiff, CAMERE SOLIS, individually and on behalf of the other members of the class, demands judgment in her favor and against Defendant, PLANET HOME LENDING, LLC, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Solis as the representative of the Classes, and appoint Solis's counsel as counsel for the Classes;

B. That the Court award the aggregate actual damages of Solis and of the other members of the Classes who have been assessed, paid, or defended against the unauthorized inspection fees;

C. That the Court order restitution for disgorgement of monies wrongfully received;

D. That the Court award prejudgment interest;

E. That the Court award reasonable attorneys' fees and costs; and

F. That the Court grant such further relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

## NOTICE TO THE CALIFORNIA ATTORNEY GENERAL

A copy of this Complaint will be mailed to the California Attorney General pursuant to Cal. Bus. & Prof. Code § 17209.

>Respectfully Submitted,
>
>SOLIS CAMERE, individually and as
>the representative of a class of similarly-situated
>persons
>
>By:    /s/ Ryan M. Kelly
>           Ryan M. Kelly (ct 30230)
>           One of her attorneys

**ANDERSON + WANCA**
Ryan M. Kelly
Patrick Solberg *(pro hac vice to be submitted)*
Jeffrey A. Berman *(pro hac vice to be submitted)*
Wallace C. Solberg *(pro hac vice to be submitted)*
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (855) 827-2329

**LEXICON LAW, PC**
John R. Habashy *(pro hac vice to be submitted)*
Tiffany Buda *(pro hac vice to be submitted)*
633 W. 5th St., 28th Floor
Los Angeles, CA 90071
Telephone: (213) 223-5900
Facsimile: (888) 373-2107